BAGNERIS, J.
Parties to this litigation are plaintiff/appellant, LHO New Orleans LM, L.P. (hereinafter referred to as “LaSalle”), the owner of the hotel Le Meridien New Orleans (hereafter referred to as “the hotel”), and MHI Leasco New Orleans, Inc. (hereinafter referred to as “MHI Leasco”), the tenant/operator/manager of the hotel. La-Salle seeks to reverse the trial court’s judgment confirming the arbitration panel’s decision and certifying the partial judgment as final.
In February 1998, LaSalle entered into a ten-year lease (hereinafter, “the lease”) for the hotel with MHI Leasco, a special-purpose entity wholly owned by Meridien Hotels, Inc. (hereinafter, “MHI”). Pursuant to the lease, MHI was able to continue its operation of the hotel pursuant to a management agreement with MHI Leasco.
For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

APPELLATE JURISDICTION

This appeal requires us to determine whether or not the trial court erred in certifying the partial judgment pursuant to LSAC.C.P. art. 1915(B). An appeal lies only from a final judgment of the trial court. LSA-C.C.P. arts. 1911 and 2083. A judgment that determines the merits in whole |4or in part is a final judgment. LSA-C.C.P. art. 1841. Whether a partial final judgment is appealable is determined by examining the requirements of LSA-C.C.P. art. 1915. This Court’s jurisdiction must be properly invoked by a final ap-pealable judgment. Thus, the issue is whether this is a final appealable judgment meeting the requisites of LSA-C.C.P. art. 1915.
In 1997, by Act No. 483, the Louisiana Legislature made significant changes with respect to the appealability of partial judgments. In re Succession of Grimmett, 31,975, p. 4 (La.App. 2 Cir. 3/5/99), 738 So.2d 27, 30. Prior to the 1997 amendments, article 1915 set forth exclusive classes of partial judgments, which were immediately appealable. Id. at pp. 2-4, 738 So.2d at 29-30. The 1997 amendments, patterned after Rule 54 of the Federal Rules of Civil Procedure, now require a certification procedure, which must be met before a partial adjudication can become immediately appealable. Id. A partial judgment rendered by a trial court shall not constitute a final judgment subject to an immediate appeal unless designated as a final judgment by the trial court after an express determination that there is no just reason for the delay, or unless specifically agreed to by the parties. LSA-C.C.P. art. 1915 B (1).
This case was filed after the 1997 amendment of LSA-C.C.P. art. 1915. Thus, the newer version is applicable to the instant case.
LSA-C.C.P. art. 1915 provides in pertinent part:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or *307 parties all of the relief prayed for, or may not adjudicate all of the issues in the case[.]
* * *
B. (1) When the court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether | sin an original demand, recon-ventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay. [Emphasis ours].
The first determination a trial court must make in certifying a partial judgment as immediately appealable under article 1915 is finality. Mark Tatum and William Norris, III, Summary Judgment and Partial Judgment in Louisiana: The State We’re In, 59 La. L.Rev. 131, 157-58 (1998). A trial court’s designation of a partial judgment as final, however, does not necessarily make that judgment immediately appealable. This Court’s appellate jurisdiction extends to “final judgments.” LSA-C.C.P. art. 2083. This Court is not bound by the trial judge’s certification of the partial adjudication as final for the purpose of an immediate appeal; we determine finality de novo. See Davis v. Specialty Diving, Inc., 98-0458, p. 5 (La.App. 1 Cir. 4/1/99), 740 So.2d 666, 669, writ denied, 99-1852 (La.10/08/99), 750 So.2d 972; Clark v. United States, 624 F.2d 3, 4 (2nd Cir.1980); Ryan v. Occidental Petroleum Corp., 577 F.2d 298, 302 (5th Cir.1978).
Although article 1915 dispenses with finality in the sense of completion of the litigation, the judgment rendered must be sufficiently final in that it disposes of the claim or dispute in regard to which the judgment is entered. See McMunn v. Hertz Equipment Rental Corporation, 791 F.2d 88, 90 (7th Cir.1986). Furthermore, in determining whether a partial judgment is a final one for the purpose of an immediate appeal, a court must always keep in mind the historic policies against piecemeal appeals. Banks v. State Farm Insurance Company, 30,868, p. 2 (La.App. 2 Cir. 3/5/98), 708 So.2d R523, 524; Doyle v. Mitsubishi Motor Sales of America, Inc., 99-0459 (La.App. 1 Cir. 3/31/00) 764 So.2d 1041.
The parties completed arbitration as ordered by this Court. MHI Leasco filed its motion to confirm the arbitration panel’s decision that was granted by the trial court. It then filed a motion to certify the judgment as final pursuant to LSA-C.C.P. art. 1915(B) (1). The trial court granted MHI Leasco’s motion and LaSalle appealed.
On appeal, LaSalle contends that the trial court erred in its certification of the partial judgment without hearing argument from counsel from LaSalle. LaSalle also argues the trial court failed to expressly state any reasons other than what it characterizes as a conclusory statement.
In its reasons for judgment, the trial court stated:
This Court notes the general statement of law in regards to partial judgments. Under Article 1915(B)(1) of the Louisiana Code of Civil Procedure, “When a court renders a partial judgment or a partial summary judgment or sustain an exception in part, as to one or more but less than all of the claims, demands, issues or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is des *308 ignated as a final judgment by the court after an express determination that there is no reasons for delay.”
In this case the partial judgment signed by the court was the judgment upholding the arbitration decision of the panel in the case at bar. Such judgment, in upholding the arbitration award, concisely fall under the realm of a partial judgment, which decides less than all of the issues in a case. Thus, this category of judgment may be deemed a final partial judgment under Article 1915(B)(1) of the Louisiana Code of Civil Procedure if the court makes the determination that delay is unnecessary. The court finds that no reason for such delay exists and thus enters the judgment as final.
 After careful review, we find that this is a properly certified final judgment. First, valid certification of a partial judgment as final requires that the trial court give reasons on the record as to why there is no just 17reason for delay; mere conclusory statements do not generally suffice. Nalty v. D.H. Holmes Co., Ltd., 99-2826, p. 3-4 (La.App. 4 Cir. 12/27/00), 775 So.2d 695, 697; Jackson v. America’s Favorite Chicken Co., 98-0605 (La.App. 4 Cir. 2/3/99), 729 So.2d 1060. However, we review the certification on a case by case basis taking into consideration the totality of what was intended and whether in context conclusory statements equate to adequate reasons.
In the instant case, the trial court failed to state why there was no reason for delay of the defendants’ right to appeal the judgment and no specific reasons as to why there is no just reason for delay appear in the record. Thus, in the absence of a designation of the judgment as final through an express determination — i.e. a meaningful and considered articulation by the trial court — of no just reason for delay, a jurisdictional defect apparently exists.
After a review of this extensive record and the lengthy transcript of the arbitration proceeding, we first find that the trial court properly certified the partial judgment as appealable, because the judgment terminates certain issues in the suit as to the parties even though the same parties will continue to litigate the remaining issues of the holdover proceedings. In view of reductions to the various awards due to MHI/MHI Leasco’s failure to vacate the hotel on January 28, 2002, it would be inequitable to permit it to collect the full amount of the judgment from LaSalle until all adjustments are known and made.[1] Finally, and most importantly, because we find that the arbitrators exceeded then-powers in connection with the award itself as explained below, the trial court properly certified the partial judgment as final.

\ CONFIRMATION of arbitration PANEL’S DECISION

LaSalle contends that the trial court erroneously confirmed and enforced the arbitration’s panel decision. It argues that the trial court confirmed the arbitration panel decision before it resolved several predicate and directly related claims. LaSalle argues that fair market value (hereinafter, “FMV”) is not a damage award, but instead represents the consideration it is to pay for the purchase of MHI Leasco’s leasehold interest in the event of a change of control pursuant to Section 22.22 of the lease between them.
LaSalle further contends that MHI Leasco is not entitled to FMV, and not *309 entitled to FMV as of January 28, 2002, without any adjustments to account for MHI Leasco’s holdover. Additionally, it argues that the arbitration panel’s determination of FMV as of January 28, 2002 did not and could not resolve the parties’ dispute in its entirety.
LaSalle also contends that the arbitrators imperfectly executed their powers and that a mutual, final, and definite award upon the subject matter submitted was not made by the panel. It cites Holmes v. New Orleans Parish School Board, 95-2451, p. 13 (La.App. 4 Cir. 7/9/97), 698 So.2d 429, 436, writ denied, 97-2102 (La.11/14/97, 703 So.2d 630), for the proposition that a final and definite award must both resolve all the issues submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligation of the parties under the award. LaSalle contends the arbitration panel’s award did not make the appropriate adjustments to the security deposit that it could make under Section 15.1 of the lease.
LaSalle contends that the arbitration panel exceeded its authority by directing it to pay the value of MHI Leasco’s security deposit, by valuing 1 n“Other assets” besides the FMV of the leasehold interest, by awarding prejudgment interest from the date of MHI Leasco’s holdover, and by awarding attorney’s fees incurred in connection with the underlying litigation. La-Salle argues that the panel’s sole authority was to determine FMV. It contends it never agreed that the issue of MHI Leas-co’s entitlement to FMV be submitted to arbitration. Finally, LaSalle contends that the arbitration panel’s decision is a manifest disregard of the law and should be vacated.
In North Cent. Utilities, Inc. v. East Columbia Water Dist., 480 So.2d 901, 904 (La.App. 2 Cir.1985), unit not considered, 481 So.2d 1329 (La.1986), the Court held:
Arbitration is a mode of settling differences through the investigation and determination by one or more individuals appointed for that purpose. The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action; (Citation omitted).
It is well settled in both state and federal courts that award may be challenged only on the grounds specified in the applicable arbitration statute. The court cannot substitute its conclusion for that of the arbitrator. In the furtherance of the purpose and intention of arbitration, the scope of judicial review as to the findings and conclusions of an arbitrator is severely restricted and the courts have consistently respected this limitation. Accordingly, a court does not ordinarily sit in an appellate capacity to an arbitration panel, but confines its determination to whether there exists one or more of the specific grounds for impeachment as provided for under the applicable statute.
This lawsuit began after MHI’s entire hotel management business was sold in July 2001. Article 22.22 of the lease between LaSalle as “Landlord” and MHI Leasco as “Tenant” provides in pertinent part:
22.22 Change of Control of Tenant. If, during the Term, any Parent or Affiliate (each a “Transferor ” of Tenant has elected to transfer its |ininterest in Tenant to a third party which is not an Affiliate of Tenant, which for the purposes of this Agreement shall only be permitted in conjunction with the sale of all, or substantially all, of Transferor’s hotel management businesses (a “Permitted Transfer ”), then such Permitted
*310 Transfer shall be made only upon the following terms and conditions:
(a) Transferor shall give written notice of the proposed Permitted Transfer to Landlord (the “Sale Notice ”); (b) Landlord shall have thirty (30) days from the date of receipt of the Sale Notice to provide Transferor with written notice (the “Purchase Notice ”) of Landlord’s intention to purchase, in Landlord’s name or in the name of Landlord’s designee, Transferor’s interest in Tenant at the then Fair Market Value[2][1] of such interest (the “Purchase ”);
* :|: ‡
(f) If the parties fail to agree on the Fair Market Value of the respective interests in Tenant, the matter shall be referred to arbitration as provided for in Article 23; ....
[Emphasis in original]
Article 23 of the lease provides as follows:
23.1Arbitration. In each case specified in this Agreement in which it shall become necessary Into resort to arbitration, such arbitration shall be determined at provided in this Section 23.1. The party desiring such arbitration shall give Notice to that effect to the other party and an arbitrator shall be selected by mutual agreement of the parties, or if they cannot agree within thirty (30) days of such notice, by appointment made by the American Arbitration Association (“AAA ”) from among the members of its panels who are qualified and who have experience in resolving matters of a nature similar to the matter to be resolved by arbitration.
23.2 23.2 Intentionally Omitted.
23.3 Arbitration Procedures. In any arbitration commenced pursuant to Article 23, a single arbitrator shall be designated and shall resolve the dispute. The arbitrator’s decision shall be binding on all parties and shall not be subject to further review or appeal except as otherwise allowed by applicable law. To the maximum extent practicable, the arbitrator and the parties, and the AAA, if applicable, shall take any action necessary to insure that the arbitration shall be concluded within ninety (90) days of the filing of such dispute. The fees and expenses of the arbitrator shall be shared equally by Landlord and Tenant.
[Emphasis in original]
The arbitration proceedings took place in New York City in October 2002 before three American Arbitration Association arbitrators. Pursuant to the written contract between the parties, initially, the arbitrators were charged with determining only the FMV of MHI’s interest in MHI Leasco, the date on which the FMV was determined, the value of the security deposit that MHI Leasco was required to post before entering into the lease, and attorney’s fees for the prevailing party. However, after the proceedings began, the *311 parties also agreed to arbitrate the additional issue of the payment of personal property taxes.[3]
haThe panel heard several days of testimony in October 2002. On December 19, 2002, the following award was issued by the panel:
1. Respondent (LaSalle) shall pay to Claimant (MHI/MHI Leasco) the sum of Three Million Six Hundred Thirty-Nine Thousand Dollars and Zero Cents ($3,639,000.00) plus interest at 9% per annum from January 28, 2002, to date of payment.
2. Claimant’s demand for payment based upon management fees is denied.
3. Respondent shall pay to Claimant Six Hundred Sixty Five Thousand Dollars and Zero Cents ($665,000.00) plus interest from January 28, 2002, at 9% per annum for other assets.
4. Respondent shall pay to Claimant Two Million Two Hundred Twelve Thousand Dollars and Zero Cents ($2,212,000.00) representing the return of the security deposit. Said sum shall be due 30 days after Claimant vacates the premises and after any adjustments have been made pursuant to Article 15 of the Lease.
5. Respondent shall pay to Claimant the sum of Seven Hundred Thousand Dollars and Zero Cents ($700,-000.00) for Claimant’s legal fees and expert fees.
6. The majority of Arbitrators conclude that the lease did contain a scrivener’s error regarding personal property taxes and Respondent was liable for the payment of these taxes.
7. Based upon the evidence submitted, the majority determined fair market value as of January 28, 2002. Any adjustment for any period after January 28, 2002, has not been included in the above determination, since it was the majority’s view that these would be dealt with by the Court adjudicating the holdover proceeding.
8. Stenographer fees shall be paid (30%) by Claimant and (70%) by Respondent.
1-isiThe administrative fees of the American Arbitration Association (“the Association”) totaling $12,500.00 shall be borne 70% Respondent; 30% by Claimant; and in accordance with Article 23.3 of the lease, the Arbitrators compensation totaling $99,460.00 shall be borne equally by the Parties. Therefore, Claimant shall pay to the Association the sum of $6,055.00. Respondent shall pay to the Association $15,305.00, representing amounts still due the Association. These amounts reflect all payments made to date.
This Award is in full settlement of all claims and counterclaims submitted to this arbitration. All claims not expressly granted herein are hereby, denied.
As reflected in the arbitration award, one of the arbitrators dissented on the issue of the payment of personal property taxes, finding that the majority disregarded well-established Louisiana law as well as the lease itself. In addition, the dissenting arbitrator objected to the award of attorney’s fees to MHI/MHI Leasco based *312 on a “record of ‘redacted’ invoices where the only description of services is either LaSalle New Orleans Litigation or LaSalle New Orleans Arbitration.”
LaSalle argues that the arbitration award itself should be amended, as the arbitrators exceeded the scope of their authority in various instances and the award evidences a manifest disregard of the law with respect to the issue on the payment of personal property taxes.
Louisiana’s Arbitration Law, La. R.S. 9:4201, et seq., provides in pertinent part:
§ 4210. Motion to vacate award; grounds; rehearing
In any of the following cases the court in and for the parish wherein the award was made shall issue an order vacating the award upon the application of any party to the arbitration.
[[Image here]]
|14P. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
The arbitrators recognized at the beginning of the proceedings that their job was to determine fair market value as set forth in the lease. As stated by the chairperson of the panel:
The judge didn’t ask us to say what should actually be paid. The judge asked us to reach a determination on fair market value.
In addition to FMV, the parties sought a declaration of the value of the security deposit and attorney’s fees. Finally, the parties submitted to arbitration the issue of which entity was responsible for the payment of personal property taxes. In substance the arbitrators were not authorized to make an award, only to declare amounts of money and responsibility of a party for same; in essence, these arbitrators were only authorized to render what amounts to a form of declaratory judgment, not to decree that one party should have an award over and against another party. Thus, the arbitrators far exceeded their authority in rendering an “award.”
As can be readily seen, the award is not a determination of FMV, but instead orders LaSalle to pay sums certain to MHI/ MHI Leasco. In that regard, the panel exceeded its authority and imperfectly executed its powers under the arbitration agreement. The arbitration award was to have declared the parties’ respective rights so that the underlying proceeding could proceed. The arbitrators themselves noted during the proceedings that adjustments would be made to the determination of FMV and the value of the security deposit since MHI/MHI Leasco did not vacate the hotel on 11RJanuary 28, 2002. The award itself even recognizes the holdover proceeding then pending in the Louisiana district court.
Finally, LaSalle contends that the arbitrators manifestly disregarded well-established Louisiana law on the personal property tax issue. “Manifest disregard of the law” by arbitrators is a judicially created ground for vacating an arbitration award and refers to error which was obvious and capable of being readily and instantly perceived by an average person qualified to serve as an arbitrator. The doctrine implies that the arbitrator appreciates existence of clearly governing legal principle but decides to ignore or pay no attention to it. Colchoneria Jiron, S.A. v. Blumenthal Print Works, Inc., 629 So.2d 1288, 1290 (La. *313 App. 4 Cir.1993), writ denied, 94-0145 (La.3/11/94), 634 So.2d 391. The doctrine has been previously accepted by Louisiana courts. Id. at 1290. However, errors of fact or law do not invalidate a fair and honest arbitration award. National Tea Co. v. Richmond, 548 So.2d 930 (La.1989) citing St Tammany Manor, Inc. v. Spartan Bldg. Corp., 509 So.2d 424 (La.1987). Thus, the doctrine of “manifest disregard of the law” clearly requires more than simply an error of law on the part of an arbitrator.
In the case at bar, the parties agreed to submit the issue of payment of the personal property taxes to arbitration on the first day of the proceedings. The arbitrators heard extensive testimony on the language of the lease and the extensive negotiations that took place prior to the final signing of the lease. The arbitrators also heard testimony regarding LaSalle’s payment of the taxes for several years and the federal securities filings that indicated LaSalle’s responsibility to pay those taxes. Obviously, the arbitrators found a mutual mistake in the drafting of the lease and reformed the lease to | ^conform to the intentions of the parties. In any event, we find no manifest disregard of the law and find this assignment of error to be without merit.
Based on the above, we affirm the trial court’s certification of the judgment as ap-pealable; in all other respects, we reverse the judgment; and we remand the matter for further proceedings consistent with this opinion. Each party is to bear its own costs.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. La. C.C.P. art. 2083 A permits appeals from "an interlocutory judgment which may cause irreparable injury....”

. Article 1.45 of the lease defines "Fair Market Value” as follows:
"Fair Market Value ” shall mean, as to a specific valuable asset, the purchase price which a seller would be able to obtain for such asset in an arms-length transaction with a buyer which is not an Affiliate of the seller, and taking into consideration all factors which might reasonably affect the sales price of the asset in questions, including, without limitation, if and as appropriate, the existence of a control block or minority interest, the anticipated impact on current market prices of immediate sale, the lack of a market for such asset, and the impact on present value of factors such as length of time before any such sales may become possible and the cost and complexity of any such sales. [Emphasis in original]

. Article 3.1.3(a) of the lease provides that the tenant shall pay all personal property taxes. However, since the inception of the lease, LaSalle had been paying the taxes, a mistake it discovered shortly after the dispute arose among the parties. When LaSalle asked that MHI Leasco reimburse it for taxes paid and assume responsibility for payment of future personal property taxes, MHI Leasco refused.